UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
RICHARD KING, DANIEL RIVERA, JOSE OTERO,
NELSON FERMIN, HARVIL ST. LOUIS, ERIC SANTIAGO,       08 Civ. 6058(SHS)
SHAWN COLEMAN, FREDDIE PICKENS, MAURICE
MALLETTE, KEVIN RESHARD, ADAM NADLER,
KENNETH BRYE, DERRICK STOREY, TEDDY DALEY,
 LANDEL ELLIS, DERYCK JACKSON, SALVATORE RUSSO,
 DARRELL WILLIAMS, STANLEY JOHNSON, KEVIN
 HILTON, DONNELL HOYES, PETER PRICE, aka WADE
GRAVES, EDWARD EALEY, aka EDWARD JONES,
WILLIE LOYD, MARIO COX, SHAWN APPLEBY, SCOTT
 GULDI and JOSEPH AMICO, on behalf of themselves and
other members of their class similarly situated

Plaintiffs,

      -against-

ANDREW M CUOMO, Attorney General, in his personal and official
capacities, ELIOT SPITZER in his personal capacity as former
Attorney-General and in his personal capacity as former Governor,
GOVERNOR DAVID PATTERSON, in his personal and official
capacities, BRIAN FISCHER, Commissioner, Department of
Correctional Services, in his official and individual capacities,
LUCIEN J LeCLAIRE, former Acting Commissioner Department
of Corrections, in his individual Capacity, ANTHONY J. ANNUCI,
Deputy Commissioner of Corrections and  Legal Counsel, in his
 individual and official capacities, JOHN PATTERSON, former
Executive Commissioner, in his Individual Capacity, and the
STATE OF NEW YORK, jointly and severally,

Defendants.

-----------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

OFODILE & ASSOCIATES, P.C
Attorneys for Plaintiffs
498 Atlantic Avenue
Brooklyn, New York 11217
718 852-8300

Table of Contents

TABLE OF CONTENTS ----------------------------------------------------------------------i

TABLE OF CASES  -----------------------------------------------------------------------iii

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS --------------------------------------------------1

PRELIMINARY STATEMENT--------------------------------------------------------------1

SUMMARY OF ARGUMENTS ------------------------------------------------------------1

I
PLAINTIFFS MET THE FRCP RULE 8 PLEADING
AND NOTICE REQUIREMENTS  ------------------------------------------------------------3

II
STATUTE OF LIMITATIONS DOES NOT BAR
ANY OF THE PLAINTIFFS' CLAIMS ---------------------------------------------------------4

III
DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY -----------------------------6

THAT DEFENDANTS WERE BOUND BY COMMITMENT
PAPERS HAS LONG BEEN ESTABLISHED ----------------------------------------------------6

THE SECOND CIRCUIT'S EARLEY DECISION INTERPRETED
CLEARLY ESTABLISHED CONSTITUTIONAL MANDATE-----------------------------------8

IV
PLAINTIFFS WERE DETAINED WITHOUT PROBABLE CAUSE-----------------------------11

V
PLAINTIFFS' RESENTENCING IS A VIOLATION OF THEIR CONSTITUTIONAL
RIGHT NOT TO BE SUBJECTED TO DOUBLE JEOPARDY

VI
THE HECK v. HUMPHREY RULE DOES NOT APPLY---------------------------------------16

VII
THE CLAIM FOR INJUNCTIVE RELIEF IS NOT MOOT--------------------------------------19

VIII
THE COURT SHOULD NOT ABSTAIN FROM DECIDING THIS CASE ----------------------20

CONCLUSIONS ------------------------------------------------------------------------------------21

*TABLE OF CASES*

*Case* *Page*

*Abbas v. Dixon,*
*480 F.3d 636,641 (2d Cir. 2007)*-------------------------------------------------------------------*5*

*Benton v. Maryland,*
*395 U.S. 784; 89 S.Ct. 2056 (1969)* ---------------------------------------------------------*13*

*Boose v. City of Rochester,*
*71 AD2d 59, 65* ------------------------------------------------------------------------------*5*

*Brown v. City of Syracuse,*
*197 Fed. Appx. 22; 2006 U.S. App. LEXIS 19025 (2d Cir. 2006)* ---------------------------------*3, 4*

*Calhoun v. New York State Div. of Parole Officers,*
*999 F.2d 647 (2d Cir. 1993)* -----------------------------------------------------------------*4, 11*

*Caminito v. City of New York,*
*25 A.D.2d 848, 849, affd 19NYS2d 663* ------------------------------------------------------*5*

*Coleman v. New York State Department of Correctional Services,*
*2008 NY Slip Op 50548U, * 4, 19 MISC 3d 1104A, 859 NYS 2d 901* ---------------------------------*9*

*Collins v. McMillan,*
*102 Ad2d 860, 861* ---------------------------------------------------------------------------*5*

*Earley v. Murray,*
*451 F.3d 71 (2d Cir. 2006) rehearing denied 462 F3d 147 (2d Cir 2006)*------------------------*8, 10*

*Earley v. Murray, 462 F3d 147 (2d Cir 2006)* ----------------------------------------------------*10*

*Ex parte Lange,*
*85 U.S. 163, 168, 173; 21 L.Ed. 872 (1874)*------------------------------------------------------*13, 14*

*Flickinger v. Harrold C. Brown & Co.,*
*947 F.2d 595, 600 (2d Cir. 1991)* -------------------------------------------------------------*4*

*Heck v. Humphrey,*
*512 U.S. 477, 129 L. Ed. 2d 383, 114 S.Ct. 2364 (1994)* --------------------------------------------16

*Huang v. Johnson,*
 *251 F.3d 65, 74 (2d Cir. 2001)* -------------------------------------------------------------------18

*Jackson v. Suffolk County Homicide Bureau,*
*135 F.3d 254 (2d Cir. 1998)* ----------------------------------------------------------------------17

*Jackson v. Police Department of the City of New York,*
*119 A.D.2d 551; 500 N.Y.S.2d 553 92nd Dept. 1986)* ----------------------------------------------5

*Leibowitz v. Cornell University,*
*445 F.3d 586 (2d Cir. 2006)* -----------------------------------------------------------------------4

*Lucas v. Novogratz,*
*2002 U.S. Dist. LEXIS 24321 (2002)* ----------------------------------------------------------------17

*Matter of Charos v. New York State Department of Correctional Services,*
*53 AD2d 654; 385 NYS2d 92 (2d Dept. 1976)* --------------------------------------------------------7

*Matter of Deer v. Mancusi,*
*35 AD2d 907* ----------------------------------------------------------------------------------------8

*Matter of Murray v. Goord, as Commissioner of the New York State Department of Correctional
Services, 1NY3d 29; 801 NE2d 385 (Court of Appeals 2003)* ------------------------------------------8

*Matter of Pan v. New York State Department of Correctional Services,*
*2007 NY Slip Op 51209U, 16 MISC 3d 1101A; 841 NYS2d 827* ------------------------------------------9

*Matter of Waters v Dennison,*
*2007 NY Slip Op 27093; 15 MISC. 3d 722. 836 NYS 2d 786 (2007)*

 *McDay v.Travis,*
*2007 U.S. App. LEXIS 26762* ------------------------------------------------------------------------11

*McDay v. Travis,*
*2007 U.S. App. LEXIS 26762 (2d Cir. 2007)*

iv

*Mckithen v. Brown,*
*481 F.3d 89 (2d Cir. 2007)* ----------------------------------------------------------------16, 18

*Middleton v. State of New York,*
*43 NYS2d 678; 371 NE2d 827 (Court of Appeals, 1977)* ---------------------------------------8

*Middleton v. State of New York, 54 A.D.2d 450, 452, 389 N.Y.2d 159 [3d Dept 1976], affd 43*
*NY2d 678, 371 NE2d 827, 401 NYS2d 65 [1977]*------------------------------------------------7, 8

*Molyneaux v. County of Nassau,*
 *22 AD2d 952, affd 16NYS2d 663*------------------------------------------------------------------5

*Nelson v. Campbell,*
*541 U.S. 637, 124 S.Ct. 2117 (2004)*  ----------------------------------------------------------17

*Northrop v. Hoffman of Simsbury, Inc.,*
*134 F.3d 41, 46 (2d Cir. 1997)* -----------------------------------------------------------------4

*Owens v. Haas,*
601 F.2d 1242 (2d Cir. 1979) -----------------------------------------------------------------4

Pearl v. City of Long Beach,.
296 F.3d 76, 80 (2d Cir. 2002) ----------------------------------------------------------------5

*People ex rel Coates v. Martin,*
8 AD2d 688; 184 NYS2d 433 (4th Dept., 1959)  -----------------------------------------6, 7, 8

*People ex rel. Jackson v. Weaver,*
279 App. Div. 88 ---------------------------------------------------------------------------7, 8

*People v. Catu,*
4NY3d 242, 825 NE2d 1081 (Ct of Appeals, 2005) -----------------------------------------12

*People ex rel. Henderson v. Casscles,*
66 Misc. 2d 492------------------------------------------------------------------------------8

*People ex rel. Hand v. Prison Board of Sing Sing,*
1919 App. Div. 127 -------------------------------------------------------------------------7

*People ex rel White v. Warden, Rikers Island Correctional Facility,*
2007 NY Slip Op 27038, 15 MISC 3d 360, 833 NYS2d 363 --------------------------------19

v

*Peralta v. Vasquez,*
467 F. 3d 98 (2d Cir. 2007) -------------------------------------------------------------16, 17, 18

*Powell v. Bucci,*
2005 U.S. Dist. LEXIS 40890 (2005) ---------------------------------------------------------18

*Russo v. City of Bridgeport,*
479 F.3d 196, 204 (2d Cir. 2007) --------------------------------------------------------------5

*Tunia v. State, 106 Misc.*
*601; 434 N.Y.S.2d 846 (Ct of Cls 1978)* ------------------------------------------------------5

*United States v. Cambindo Valencia,*
*609 F.2d 603, 737 (2d Cir. 1979)* -----------------------------------------------------------14

*United States v. Fogel,*
*264 U.S. App. D.C. 292, 829 F.2d 77, at 86-87 (1987)* ------------------------------------14

*United States v. Aliotta,*
*199 F.3d 78, 83 (2d Cir. 1999)*--------------------------------------------------------------14

*Wllace v Kato, 127 S.Ct.*
*1091, 1095-96 (2007)* ----------------------------------------------------------------------5

*Wynder v. McMahon,*
360 F.3d 73, at 77 (2d Cir. 2004)  -----------------------------------------------------------3

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

All Plaintiffs either pled guilty to or were convicted of criminal offenses and were sentenced to determinate sentences which each has finished serving. The commitment papers following each Plaintiff did not stipulate a period of Post Release Supervision (PRS). However, Defendants administratively added a five year period of supervision to each sentence.

Although the State of New York passed a law authorizing the resentencing of individuals, most of the Plaintiffs were resentenced to the original jail terms without any period of post release supervision and some of the Plaintiff were not resentenced at all. Only one Plaintiff, among all named Plaintiffs in this case, as far as Counsel is aware, was resentenced with a period of post release supervision added to the original sentence during resentencing. For some of the Plaintiffs who have not been resentenced, the Department of Corrections have continued to attempt to subject them to parole supervision and to claim that they are still under parole.

**SUMMARY OF ARGUMENTS**

The claim that Defendants are entitled to qualified immunity because the law is not clearly established that their incarceration of Plaintiffs and members of the proposed class based on administrative imposition of PRS that a judge has not imposed, Plaintiffs submit, is without merit for two principal reasons, both of which defendants were aware have long been established before PRS arose even as an issue.

First, the New York State Court of Appeals in 1977 had held that the Department of

1

Corrections cannot and should not ignore a sentence imposed by the Court and the commitment papers because they disagreed with sentence or believed that it was an illegal sentence and that their only option under the circumstances is to take the Defendant back to the sentencing court for the correction of that error.

Second, that the double jeopardy Clause of the 6th Amendment attaches after completion of the sentence has been well established and all the Plaintiffs in this case and the proposed class had finished serving their sentences when the Defendants then sought to impose additional periods of imprisonment. Some of the sentences coupled with periods of post-release supervision would result in some plaintiffs serving more than the maximum sentences established by law for the crimes which they plead guilty to or were convicted of which is clearly unconstitutional.

The Rule in Heck v. Humphrey does not apply in this case because these were not "sentences" as the term has been defined and understood but administrative actions. Therefore the argument that the Heck v. Humphrey rule applies should be rejected.

There is no need for the Court to forbear from deciding the issues presented in this case as the constitutional issues are ripe for adjudication and it would be improper and unjust to allow inconsistencies in individual judge's decisions to determine the existence or extent of a constitutional right when the true contours of the right had been clearly established.

Plaintiffs are still entitled to a declaration and an injunction because the re-sentencing for those individuals who have finished serving their sentences is unconstitutional as a matter of law and the constitution expressly prohibits ex post facto laws and the legislation seeking re-sentencing is an ex post facto law.

2

# I

## PLAINTIFFS MET THE FRCP RULE 8 PLEADING AND NOTICE REQUIREMENTS

Fed. R. Civ. P. 8 pleading is extremely permissive. Rule 8(a)(2) provides (a) that a complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief, and (b) that such a statement simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests - *Wynder v. McMahon,* 360 F.3d 73, at 77 (2d Cir. 2004) (citations omitted); See also *Brown v. City of Syracuse,* 197 Fed. Appx. 22; 2006 U.S. App. LEXIS 19025 (2d Cir. 2006). A district Judge may not order, under penalty of dismissal, that plaintiff file a complaint that goes above and beyond Rule 8 requirements and it is an abuse of discretion to do so. *Wynder, id.* See also *Brown v. City of Syracuse, supra.*

Based on the allegations made in the Complaint, Plaintiffs alleged that Defendants had knowledge of the constitutional violations, were in a position to remedy same and failed to do so. In fact Defendants in this case were collectively the individuals that instituted the constitutional violations that Plaintiffs allege in this suit. Counsel's conclusory allegation that one particular defendant or the other did not have personal involvement is not an issue to be dealt with during a motion to dismiss but on a motion for summary judgment after discovery.

The assertion that Plaintiff did not for instance, detail how each Defendant had personal knowledge and participated in the violation of the rights claimed are all evidential matters that are fleshed out during discovery and not pleading issues. *Wynde,r supra,* at 77 (United States Court of Appeals for the Second Circuit case law makes clear that legal theories, specific authority, statutory and case law, and evidence in detail are not requirements imposed by Fed.

R.Civ. 8) citing among other cases, *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 46 (2d Cir. 1997); *Flickinger v. Harrold C. Brown & Co.,* 947 F.2d 595, 600 (2d Cir. 1991). See also *Brown v. City of Syracuse,* 197 Fed. Appx. 22; 2006 U.S. App. LEXIS 19025 (2d Cir. 2006).

As the Second Circuit has repeatedly emphasized, and, as the cases cited the above paragraph make clear, Rule 8 of the Federal Rules of Civil Procedure does not impose any such mandates and a district court imposing mandates not imposed by that rule would be abusing its discretion. See also *Leibowitz v. Cornell University,* 445 F.3d 586 (2d Cir. 2006).  In any case, Plaintiff is entitled to discovery before he may be required to give any more details than he has already given at this time. See *Owens v. Haas,* 601 F.2d 1242 (2d Cir. 1979).


## II

## STATUTE OF LIMITATIONS DOES NOT BAR ANY OF THE PLAINTIFFS' CLAIMS

Plaintiffs claim in this case is that they were all falsely imprisoned due to the administrative imposition of post release supervision. Plaintiffs had served their sentences. The cause of action would only arise at the end of their imprisonment. Because post release supervision is custodial imprisonment, the statute of limitations for each Plaintiff did not begin to accrue until the end of the period of post release supervision. Each Plaintiff has a due process right in being released at the expiration of the maximum term of imprisonment. See *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647 (2d Cir. 1993); *McDay v. Travis*, 2007 U.S. App. LEXIS 26762 (2d Cir. 2007)

The Second Circuit looks at State law principles to determine the validity of a claim for false arrest or false imprisonment as well as for tolling of the statute of limitations in § 1983

4

actions under similar state laws . See *Russo v. City of Bridgeport,* 479 F.3d 196, 204 (2d Cir.

2007); *Pearl v. City of Long Beach,*. 296 F.3d 76, 80 (2d Cir. 2002); *Abbas v. Dixon*, 480 F.3d

636,641 (2d Cir. 2007). "A cause of action for the tort of false imprisonment accrues as of the

date of the prisoner's release from confinement".- *Jackson v. Police Department of the City of*

*New York*, 119 A.D.2d 551; 500 N.Y.S.2d 553 92nd Dept. 1986) citing *Collins v. McMillan*, 102

Ad2d 860, 861 *Boose v. City of Rochester*, 71 AD2d 59, 65; *Caminito v. City of New York*, 25

A.D.2d 848, 849, affd 19NYS2d 663; *Molyneaux v. County of Nassau*, 22 AD2d 952, affd

16NYS2d 663; *Tunia v. State*, 106 Misc. 601; 434 N.Y.S.2d 846 (Ct of Cls 1978).

   Common sense dictates that when a person is unlawfully incarcerated or restrained in

violation the person's rights, the statute of limitations should not begin to run until that person is

free from the restriction. This is not a situation where a Plaintiff has been bound over to a

magistrate where the cause of action for false imprisonment ends and the cause of action for

malicious prosecution begins. As the supreme Court made clear in *Wallace v Kato*, 127 S.Ct.

1091, 1095-96 (2007), in an ordinary false imprisonment claim, "the running of the statute of

limitations on false imprisonment is subject to a distinctive rule - - dictated, perhaps, by the

reality that the victim may not be able to sue while still imprisoned". The statute of limitations in

such cause of action begins to run when the imprisonment ends. *Wallace*, *id.* This action is like

the old common law action of trespass to the person - and a cause of action arises each time the

trespass is repeated or continued. For Plaintiffs subjected to PRS, it was just one continuous

trespass and the statute of limitations would begin to run when the trespass to the person stopped.

   As the Plaintiffs are not alleging malicious prosecution and could not allege same because

they had not been held for any offenses nor were they being prosecuted for any criminal offenses

independent of the crime for which they had been convicted and had finished serving their sentences for, the common law rule applies to the present situation. Although the Complaint did not delineate when each Plaintiff got knowledge, knowledge would be irrelevant in a false imprisonment claim. Furthermore, were the court to conclude otherwise, dismissal would not be the appropriate remedy.

## III

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The allegation of the defendants is that a parole warrant is valid on its face and therefore there was probable cause for the arrest of Plaintiffs and qualified immunity attached for their arrests but this claim is not against the arresting officers who were acting on the void warrants but against the Generals who issued the void warrants.

## THAT DEFENDANTS WERE BOUND BY COMMITMENT PAPERS HAS LONG BEEN ESTABLISHED

All Appellate Divisions in New York State have long held that the Department of Corrections is bound by the commitment paper that follows an inmate and that the Department of Corrections is not free to disregard same. The Department Corrections has long accepted and conceded this as established law.

In *People ex rel Coates v. Martin*, 8 AD2d 688; 184 NYS2d 433 (4th Dept., 1959) the Court incorrectly sentenced the Defendant by giving him credit for 242 days he served in Nassau County jail while already under another state sentence and awaiting trial on the Nassau County

charges which was an illegal sentence. The Warden of Attica Correctional Facility where

defendant was received and was serving his sentence refused to abide by the decision of the

Nassau County Judge because he concluded that it was an illegal sentence. The lower Court

directed that the Warden give the credit in accordance with the sentence and the State appealed.

In affirming the order of the lower court, the Fourth Department held:

> The petitioner received full credit on his Kings County sentence for
> the time he spent in Nassau County Jail. Nevertheless, the Warden
> had no right to refuse to give the petitioner credit for 242 days
> upon the Nassau County sentence, as directed by the court. Prison
> officials are bound by the terms of the commitment papers and they
> cannot add to or detract therefrom. ... The error in the sentence
> must be corrected by appropriate judicial proceedings in the
> sentencing court.

Citations omitted.

The Third Department in *People ex rel. Jackson v. Weaver*, held that "the warden or

superintendent of an institution can only determine the duration of a sentence from the

commitment papers accompanying a prisoner. .... He can neither add nor detract therefrom"citing

*People ex rel. Hand v. Prison Board of Sing Sing,* 1919 App. Div. 127. In *Middleton v. State of*

*New York,* 54 AD2d 450; 389 NYS2d 159 (3rd Dept. 1976), the Court held that "it is now well

settled that prison officials are conclusively bound by the contents of commitment papers

accompanying a prisoner and that they cannot add to or detract therefrom".

The Second Department in the *Matter of Charos v. New York State Department of*

*Correctional Services*, 53 AD2d 654; 385 NYS2d 92 (2d Dept. 1976) stated that appellants

[DOCS] concede that they are bound by the terms of commitment papers they received, citing

*Matter of Deer v. Mancusi,* 35 AD2d 907; *People ex rel. Coates v. Martin*, 8 AD2d 688; *People*

*ex rel. Henderson v. Casscles*, 66 Misc. 2d 492; *People ex rel. Jackson v. Weaver,* 279 App. Div. 88.

The New York Court of Appeals adopted the Third Department's holding that the Department of Corrections is *conclusively* bound by the commitment papers which follows the inmate and is not free to disregard same even it believes that the sentence is illegal. See *Middleton v. State of New York,* 43 NYS2d 678; 371 NE2d 827 (Court of Appeals, 1977) approving the opinion of Mr. Justice Robert G. Main at the Appellate Division (54AD2d 450). In 2003, the Court of Appeals unequivocally reaffirmed *Midddleton* in *Matter of Murray v. Goord, as Commissioner of the New York State Department of Correctional Services*, 1NY3d 29; 801 NE2d 385 (Court of Appeals 2003)(DOCS is not free to disregard a commitment order, as it did here). In Matter of Murray, DOCS had argued that it was forced to chose between inconsistent directives, a similar argument being made in this case. The Court went on to state:

> While we appreciate DOCS's dilemma, "prison officials are *conclusively* bound by the contents of the commitment papers accompanying a prisoner". (*Middleton v. State of New York*, 54 A.D.2d 450, 452, 389 N.Y.2d 159 [3d Dept 1976], affd 43 NY2d 678, 371 NE2d 827, 401 NYS2d 65 [1977] on op below [emphasis added]). DOCS's only valid option in circumstances such as these is to comply with the plain terms of the last commitment order received.

### THE SECOND CIRCUIT'S EARLEY DECISION INTERPRETED CLEARLY ESTABLISHED CONSTITUTIONAL MANDATE

Defendants in this case are making all the arguments they made before the Second Circuit in *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) rehearing denied 462 F3d 147 (2d Cir 2006)

which that court rejected. In this Court, they are in effect asking this Court to reject the interpretation of federal constitutional law espoused by the Second Circuit when it held that it was clearly established that sentencing is the province of the judiciary, not that of the executive branch of the government. In *Earley*, the Second Circuit was espousing a principle that has long been one of the important cornerstones of a constitutional order. [T]he concept that a bureaucrat, rather than a judge, can impose sentence is such a radical departure from our jurisprudence that a departure cannot be taken implicitly or by inference". *Coleman v. New York State Department of Correctional Services*, 2008 NY Slip Op 50548U, * 4, 19 MISC 3d 1104A, 859 NYS 2d 901 Furthermore, the argument that until recently appellate courts in New York have held that PRS is automatically part of every sentence misses the point that the due process issues squarely raised in this case were not presented in those cases and none of those cases raised the issue decided and applied by all the appellate state courts and emphasized by the Court of Appeals, which is that Defendants are not free to disregard the commitment papers whether those papers are legal or illegal. See generally *Matter of Waters v Dennison*, 2007 NY Slip Op 27093; 15 MISC. 3d 722. 836 NYS 2d 786 (2007); *Matter of Pan v. New York State Department of Correctional Services,* 2007 NY Slip Op 51209U, 16 MISC 3d 1101A; 841 NYS2d 827.

Because it has long established as a matter of State constitutional principle that Defendants are conclusively bound by the terms of the commitment papers following a prisoner and Defendants were and are not at liberty to disregard them, a claim of qualified immunity may not lie for an issue that has been well established and acknowledged as established by Defendants in this case. Plaintiffs had clearly established Due Process rights based on state law that had stipulated during the time of their conviction and sentence that bureaucrats had no right to change

9

the sentences imposed upon them by the sentencing judges and such right to due process was applicable to states via the 14ᵗʰ Amendment.

Because the commitment papers contain the sentences imposed by the sentencing judges and it is the only authority by which an inmate may be legally held, administrative imposition of PRS, the Second Circuit concluded is *void ab initio*. See *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) rehearing denied 462 F3d 147 (2d Cir 2006). Every argument made by Defendants in this case relating to the automatic nature of PRS and how not imposing same would result in an illegal sentence or a plaintiff here not serving the term intended by the legislature has been rejected by the Second Circuit in *Earley* . The New York Court of Appeals long before Earley had also concluded that Defendants are *conclusively bound* by the commitment papers. Therefore, the Second Circuit Court of Appeals pronouncement in *Earley,* 451 F.3d 71 at 76 that: "The New York's Department of Correctional Services has no more power to alter a sentence than did the clerk of the court in Wampler. Earley's sentence was therefore never anything other than the six years of incarceration imposed on him by the judge at his sentencing hearing and recorded in his order of commitment. Any additional provision of post-release supervision added to a sentence by the DOCS is a nullity. The imposition of a sentence is a judicial act; only a judge can do it. A penalty administratively added by the DOCS is, quite simply, never a part of the sentence" was not creating new law but expounding clearly established law.

By its decision in *Earley*, the Second Circuit did not create new law nor did its decision differ at all from state law which, when the issue has been squarely presented for decision, has unequivocally held that administrators could not add to or detract from the actual sentences imposed by the courts. Therefore, the claim of qualified immunity should be rejected.

10

<u>IV</u>

**<u>PLAINTIFFS WERE DETAINED WITHOUT PROBABLE CAUSE</u>**

It is undisputed that each of the Plaintiffs had served the term to which he was sentenced by a sentencing judge. It is also not disputed that each Plaintiff was arrested and detained not for a new crime but because of the imposition of PRS. It is also undisputed that the commitment papers upon which each Plaintiff was committed did not have any period of post release supervision attached. The administrative imposition of PRS which was done by the defendants to begin with and which was the basis of the detention of each of Plaintiffs was not privileged but a nullity as *Earley* clearly stated. When the process that led to the arrest/imprisonment was void ab initio, the imprisonment could not be with probable cause.

The argument of the Defendants on this issue misses the point of Plaintiffs suit and the position of the Defendants in this case. The Defendants are not the foot soldiers who were just carrying out the illegal orders but the Generals who ordered and directed the foot soldiers to detain Plaintiffs in violation of their due process rights. While the low level officers and police officers may be entitled to qualified immunity for acting on facially valid warrants, Defendants who knowingly caused the issuance of warrants they knew or had reason to know was *void ab initio* may not escape liability by arguing that the foot soldiers carrying out their orders may be entitled to qualified immunity. Cf. *McDay v.Travis*, 2007 U.S. App. LEXIS 26762, citing *Calhoun v. New York State Div. of Parole Officers*, 99 F.2d 647 (2d Cir. 1993).

It was not privileged because Defendants were well aware at the time that they added the PRS that the commitment papers controlled and they were not free to disregard the contents and must abide by same or go to court to get any resentencing done. Although some of the Plaintiffs

11

may have been arrested due to a parole warrant, such warrant was not a sentence and they were detained not by virtue of their conviction or sentence but by virtue of a warrant of commitment which is void . See. *Earley*, 451 F3d , 71 at 75 (a warrant of commitment, prepared by a clerk, departing in matter of substance from the judgment back of it is void. A prisoner is detained, not by virtue of the warrant of commitment, but on account of the judgment and sentence)

Sentencing is the province of the judiciary and not that of the Executive. Defendants argument, simply put is this, that they knew that they were bound by the commitment papers and were not free to disregard same even when they believed that the sentence is illegal. However, instead of abiding by them or applying to court for modification, they decided to apply it to Plaintiffs in hope that their imposition would get the courts to change the law. For trying to change established law, they are entitled to qualified immunity even when they fell short and the courts reaffirmed long established principles. Such an argument has never been and should not be a ground for granting qualified immunity.

The allegation that they had probable cause and that the law was self-executing is made more improbable by the fact that the periods of post-release supervision varied depending on whether the person was a first time offender, repeat offender and the seriousness of the violent offence committed. See *People v. Catu*, 4NY3d 242, 825 NE2d 1081 (Ct of Appeals, 2005) The law provided between 1 ½ years to 5 years of post release supervision. A judge has the discretion to sentence a person to a period of post release supervision and a discretion as to the length of that period. Defendants decided, contrary to their admitted knowledge that they had no power to do so but must return to the Judge if they disagreed with a sentence, to sentence each individual to the maximum period of PRS when they could possibly only be sentenced to the minium.

12

Some plaintiffs who were sentenced to two years imprisonment and whose maximum sentence for the offenses for which they were convicted or pled guilty to under the law could not have been no more than 5 years ended up being incarcerated for seven years or more.

## V

## PLAINTIFFS' RESENTENCING IS A VIOLATION OF THEIR CONSTITUTIONAL RIGHT NOT TO BE SUBJECTED TO DOUBLE JEOPARDY

The Fifth Amendment's prohibition of double jeopardy represents a fundamental ideal in the federal constitutional heritage and applies to the states through the 14th Amendment of the United States Constitution. See *Benton v. Maryland,* 395 U.S. 784; 89 S.Ct. 2056 (1969).

"[T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." *Ex parte Lange*, 85 U.S. 163, 168, 173; 21 L.Ed. 872 (1874). Plaintiffs and all members of the proposed class had all finished serving their court imposed sentences when defendants subjected them to administrative supervision which is custodial as a matter of law and a second punishment for the same crime.

Although when double jeopardy attaches sometimes depends on statutory provision governing the specific crime and whether the government has the right to appeal or not, on the facts of this case where Plaintiffs had finished serving the specific court imposed sentences before they were subjected to additional periods of imprisonment which the sentencing court did not impose, clearly, the double jeopardy clause of the constitution was violated . So also is any attempt to resentence plaintiffs or some of the plaintiffs and increase the period of sentence after they had completed their sentences as they had clear expectation of finality in their sentences. As

13

the Supreme Court declared  in *Ex parte Lange*, 85 U.S. 163, 168; 21 L.Ed. 872 (1874):

> If there is anything settled in the jurisprudence of England and
> America, it is that no man can be twice lawfully punished for the
> same offence. And though there have been nice questions in the
> application of this rule to cases in which the act charged was such
> as to come within the definition of more than one statutory offense,
> or to bring the party within the jurisdiction of more than one court,
> there has never been any doubt of its entire and complete
> protection of any party when a second punishment is proposed in
> the same court, on the same facts, for the same statutory offense.

The Court went on to hold that when there has been no punishment, an appeal would lie

and when there has been punishment, the right of appeal would be gone and concluded that: "The

protection against the action of the same court in inflicting punishment twice must surely be as

necessary, and as clearly within the maxim, as protection from chances or danger of a second

punishment on a second trial". Ex parte Lange, 85 U.S. 163 at 169. .

Some of the Plaintiffs based on the action of Defendants were subjected to sentences

greater than that authorized by the legislature, thereby subjecting them to double jeopardy. See

*Ex parte Lange*, 85 U.S. 163; 21 L.Ed. 872 (1874), *United States v. Fogel*, 264 U.S. App. D.C.

292, 829 F.2d 77, at 86-87 (1987). A defendant has a legitimate expectation in the finality of

sentence unless he or she should be aware at sentencing that the sentence may permissibly be

increased. *Fogel*, id.

As a general rule, double jeopardy attaches in a criminal case at the time a district court

accepts the defendant's guilty plea. See *United States v. Aliotta*, 199 F.3d 78, 83 (2d Cir.

1999)(quoting *United States v. Cambindo Valencia*, 609 F.2d 603, 737 (2d Cir. 1979)(stating "it

is axiomatic of the double jeopardy clause that jeopardy attached once [defendant's] guilty pleas

was accepted").  If double jeopardy did not attach to Plaintiffs in this case who had finished

14

serving the maximum sentences imposed on them legally by their sentencing judges, then double jeopardy as a constitutional norm would hardly ever apply to multiple punishments at all.

The clearly established law when Plaintiffs were sentenced was that bureaucrats did not have power to add to or detract from sentences as evidenced by the commitment papers. The state had one year to move to resentence any Plaintiff and did not do so. Plaintiffs at that time had an expectation of finality when the State did not move to vacate or have them resentenced and they served the maximum terms they were sentenced to.

Passing a law that authorizes the resentencing of Plaintiffs to additional periods of custodial supervision after they had finished serving their sentences is the classic case that the constitution seeks to prevent. It is also against the Constitution's prohibition of *est post facto* laws, especially a law that is criminal in nature. This law deals with criminal punishment and authorizes, es post facto, the imposition of additional periods of custodial supervision and imprisonment on plaintiffs that they could not be lawfully sentenced to at the moment the law was passed. Therefore, the law itself is unconstitutional as applied to Plaintiffs who had completed their sentences and who would then be sent back to jail, on the basis of this law only, to continue serving sentences that had already completed based on the pronouncement of their sentencing judges.

# VI

## THE HECK v. HUMPHREY RULE DOES NOT APPLY

Plaintiffs may seek damages in this case without having their sentences modified by state courts or even in spite of any modification of same because they have already suffered the injuries and are not seeking to overturn their state court sentences. In light of the Second Circuit's decisions in *Mckithen v. Brown,* 481 F.3d 89 (2d Cir. 2007) and *Peralta v. Vasquez,* 467 F. 3d 98 (2d Cir. 2007) and the rule enunciated by the Supreme Court in *Heck v. Humphrey,* 512 U.S. 477, 129 L. Ed. 2d 383, 114 S.Ct. 2364 (1994), Plaintiffs have no impediment to proceeding with this suit based on the principles enunciated by *Heck v. Humphrey.*

The exhaustion of state remedies requirement as outlined in *Heck v. Humphrey* certainly does not apply to all federal civil rights claims, and is in fact not even a cause for consideration in § 1983 claims at all unless a judgment in favor of a plaintiff would <u>necessarily</u> result in the invalidation of an outstanding criminal conviction:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit [emphasis added].

*Heck*, 512 U.S. at 487.  If there remains even a slight possibility that Plaintiff's claim does not directly bring into question the validity of a criminal conviction or the duration of a sentence, such a claim cannot be dismissed; or, in other words, the fact that a successful § 1983 claim could invalidate a criminal conviction is by itself insufficient to warrant dismissal.

16

In *Nelson v. Campbell,* 541 U.S. 637, 124 S.Ct. 2117 (2004), the Supreme Court reiterated that § 1983 actions for damages are generally outside the core of a habeas corpus proceeding. *Id.* 637 U.S. at 643. See also *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006) .

Indeed, the Second Circuit in *Jackson v. Suffolk County Homicide Bureau*, 135 F.3d 254 (2d Cir. 1998), held that the plaintiff's Fifth Amendment Claim should not have been dismissed pursuant to *Heck*, since the claim "lacks the requisite relationship to the conviction." *Id.* at 257. The court went on to state:

> For example, the state court might find that the confessions did not result from the use of force. Or it might find that the confessions were coerced by the use of force, but that the failure to suppress them was harmless error [citations omitted].

*Id.* Without requiring the plaintiff to demonstrate the lack of connection between the aforementioned claim and the conviction, the court in *Jackson* on its own initiative considered situations in which such connection "might" not be necessary, despite the alleged fact that the "use of force coerced [plaintiff] to make confessions that were then used against him at his criminal trial." *Id.*

Same principles apply to claims of false arrest and false imprisonment. In *Lucas v. Novogratz*, 2002 U.S. Dist. LEXIS 24321 (2002), the court determined that under the *Heck* principle, "favorable termination of the criminal proceeding is not required for a plaintiff to succeed in his state law false arrest and false imprisonment claims." *Id.* at *9. This is because "a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction." *Id.* at *8 [citation omitted].

Furthermore, the court in *Heck* stated that a § 1983 claim that seeks damages "for using the wrong procedures, not for reaching the wrong result" would not be barred unless "using the

17

wrong procedures necessarily vitiated [the wrong result]." *Heck*, 512 U.S. at 482-483.  See also

*Huang v. Johnson*, 251 F.3d 65, 74 (2d Cir. 2001); *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir.

2006). This would mean that any detainment, arrest, raid, malicious prosecution, or search and

seizure without probable cause or otherwise on a procedurally wrongful basis could give rise to a

civil claim that would not be barred under *Heck*.  For instance, in *Powell v. Bucci,* 2005 U.S.

Dist. LEXIS 40890 (2005), the court denied in part the defendants' motion to dismiss while

reiterating the principle that civil claims arising not out of the conviction itself, but rather the

wrong procedures undertaken in pursuit of said conviction, are not subject to dismissal under

*Heck*:

> In *Mckithen v. Brown,* 481 F.3d 89 (2d Cir. 2007), this Court held, *per curiam,* after

reviewing Supreme Court decisions in this area and Supreme Court reiterations that its decision

in *Heck* and its progeny is a narrow or limited exception to the broad powers to bring action for

constitutional violations under § 1983, and the fact that prevailing in a § 1983 lawsuit may act as

a spring board to challenge a criminal conviction or make it more likely that the conviction

would be overturned is not and would not necessarily involve the invalidity of the criminal

conviction opined:

> We conclude that the governing standard for application of the *Preiser- Heck*
> exception, then, is whether a prisoner's victory in a § 1983 suit would *necessarily*
> *demonstrate* the invalidity of his conviction or sentence; that a prisoner's success
> might be merely helpful or *potentially* demonstrative of illegal confinement is,
> under this standard, irrelevant.

*Id.* (emphasis in the original).

In the case at bar, Plaintiffs are not questioning their convictions nor the duration of their

sentences which were judicially pronounced. They ask neither that the judgment of conviction be

18

vacated nor that the sentence imposed on them by the court be set aside. Cf. *People ex rel White v. Warden, Rikers Island Correctional Facility*, 2007 NY Slip Op 27038, 15 MISC 3d 360, 833 NYS2d 363  They are questioning administrative imposition of sentences on them which had nothing to do with the judicial proceedings they were involved in. Plaintiffs all served the sentences state court sentenced them to. They have not challenged the conviction or sentence. What they are questioning is not a judicial action, but Defendants extra-judicial imposition of periods of post release supervision in total disregard of the separation of powers doctrine. In effect, Plaintiffs are questioning the use of the wrong processes.

Defendants argument that Plaintiffs have not proved or have to prove that their sentences have been overturned and that the rule in *Heck v. Humphrey* prohibits this suit is totally misplaced. Plaintiffs have never contended that they were sentenced to post release supervision. To the contrary, Plaintiffs case herein is that post release supervision was never and has never been part of their sentences.

## VII

## THE CLAIM FOR INJUNCTIVE RELIEF IS NOT MOOT

Many lower state courts are refusing to resentence some Plaintiffs and members of the proposed class because they saw nothing wrong with the original sentences. Some resentenced some plaintiffs and members of the proposed class to the original terms without any period of post release supervision. Only one Plaintiff, out of all named representatives, is Counsel aware has been sentenced to an additional period of post release supervision. The Department of Corrections is still threatening detention of Plaintiffs who were not resentenced to periods of post

release supervision, which is most of the Plaintiffs and members of the proposed class who had finished serving their maximum sentences before Defendants sought to resentence them for not complying with conditions of post release supervision.

Because there is a real danger that some of the Plaintiffs may yet be detained for violation of "their conditions of parole", the claim for injunctive relief is not moot. Furthermore, the only Plaintiff (Darrell Williams) who has been resentenced to an additional period of post release supervision is still seeking an injunction and a declaration that the additional period of post release supervision imposed on him is unconstitutional because it violated his right not to be subjected to double jeopardy.

Finally, this being a motion to dismiss, the court may not act on unsupported assertions of Counsel and disregard the facts as alleged in the Amended Complaint.


## VIII

## THE COURT SHOULD NOT ABSTAIN FROM DECIDING THIS CASE

The issues raised in this case are purely constitutional issues regarding whether Plaintiffs were denied their rights to due process and whether or not their rights not to be subjected to double jeopardy had been violated by the actions of defendants.

The Second Circuit in *Earley* has already decided most of the issues raised in this lawsuit and the New York State Court of Appeals has also decided important state law issues that could arise as a result. Plaintiffs contend that they are still being subjected to and would still be subjected to unconstitutional acts. There are real constitutional issues in controversy between the parties and the interpretation and application of federal constitutional principles is the province

20

of federal courts, and federal districts courts in the first instance.

## <u>CONCLUSIONS</u>

Based on the foregoing, Plaintiffs respectfully request that the Defendants Motion to

Dismiss be denied its entirety.

Dated: Brooklyn, New York
      March 2, 2009

                                       Respectfully Submitted:
                                       OFODILE & ASSOCIATES, P.C

                                       By_____s/b_____
                                       Anthony C Ofodile (AO-8295)
                                       498 Atlantic Avenue
                                       Brooklyn, New York 11218
                                       718 852-8300

## <u>AFFIRMATION OF SERVICE</u>

Anthony C. Ofodile, an attorney duly admitted to practice in the State of New York and in the United States Court of Appeals for the Southern District of New York affirms under penalty of law that on March 2, 2009, I caused to be served on Defendants in this case, the Amended Memorandum of Law in Opposition to Motion to Dismiss the Amended Complaint which has the table of Contents and Table of Cases, by the operation of the Court's Electronic filing system and by mailing a copy thereof to:

> Michael J. Keane, Esq.
> Assistant Attorney General
> Office of The State Attorney General
> 120 Broadway, 24th Floor
> New York, New York 10271

Dated: Brooklyn, New York
      March 2, 2009

                                    s/b
                                    Anthony C. Ofodile