UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD KING, DANIEL RIVERA, JOSE OTERO, NELSON FERMIN, HARVIL ST. LOUIS, ERIC SANTIAGO, SHAWN COLEMAN, FREDDIE PICKENS, MAURICE MALLETTE, KEVIN RESHARD, ADAM NADLER, KENNETH BRYE,

DERRICK STOREY, TEDDY DALEY, LANDEL ELLIS, DERYCK JACKSON, SALVATORE RUSSO, DARRELL WILLIAMS, STANLEY JOHNSON, KEVIN HILTON, DONNELL HOYES, PETER PRICE, aka WADE GRAVES, EDWARD EALEY, aka EDWARD JONES, WILLIE LOYD, MARIO COX, SHAWN APPLEBY, SCOTT GULDI, JOSEPH AMICO, AVANT BURRIS, JOSE SANTOS, JEFFREY WATKINS, CECIL RICHARDSON, aka AHKIM ZIMBAR, and THOMAS TAYLOR, on behalf of themselves and other members of their class similarly situated

Plaintiffs,

-against-

ANDREW M CUOMO, Attorney General, in his personal and official capacities, ELIOT SPITZER in his personal capacity as former Attorney-General and in his personal capacity as former Governor, GOVERNOR DAVID PATTERSON, in his personal and official capacities, BRIAN FISCHER, Commissioner, Department of Correctional Services, in his official and individual capacities, LUCIEN J LeCLAIRE, former Acting Commissioner Department of Corrections, in his individual Capacity, ANTHONY J. ANNUCI, Deputy Commissioner of Corrections and Legal Counsel, in his individual and official capacities, JOHN PATTERSON, former Executive Commissioner, in his Individual Capacity, and the STATE of NEW YORK, jointly and severally,

Defendants.

08 Civ. 6058 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge

Various plaintiffs have brought this action pursuant to 42 U.S.C. § 1983 to seek redress of alleged violations of their rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, plaintiffs contend that the imposition of post-release supervision—whether administratively imposed by the New York State Department of Correctional Services or subsequently imposed by New York State courts through judicial resentencing pursuant to Correction Law § 601-d—after they had served their determinate sentences subjects plaintiffs to multiple punishments in violation of the Double Jeopardy Clause of the Constitution. Plaintiffs seek damages from several state officials in their individual capacities and declaratory relief from the State of New York and state officials in their official capacities. The defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Because the individual defendants are entitled to qualified immunity and the Eleventh Amendment otherwise bars plaintiffs' claims, the Court grants defendants' motion to dismiss.

## I. BACKGROUND

### A. Legal Background

In 1998, the New York legislature enacted "Jenna's Law," which requires the imposition of post-release supervision ("PRS") "as a mandatory follow-up period to a determinate sentence for violent felony offenders." State v. Myers, 22 Misc. 3d 809, 812-13, 870 N.Y.S.2d 757 (Sup. Ct. Albany Co. 2008); see also N.Y. Penal Law § 70.45 (1999) ("Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision."). For several years after the enactment, if the sentencing court did not impose a period of PRS at the time it imposed

a determinate sentence, the Department of Correctional Services ("DOCS") imposed post-release supervision administratively and New York appellate courts consistently upheld that administrative imposition of PRS. See, e.g., Collins v. State, 69 A.D.3d 46, 50, 887 N.Y.S.2d 400 (4th Dep't 2009) (citations omitted); Myers, 22 Misc. 3d at 811, 812-13.

Then, on June 9, 2006, the United States Court of Appeals for the Second Circuit applied the seventy-year-old United States Supreme Court decision in Hill v. United States ex rel. Wampler and held that DOCS' imposition of extra-judicial sentences of PRS violated federal law. Earley v. Murray, 451 F.3d 71, 76 (2d Cir. 2006). Nevertheless, following the Second Circuit's decision in Earley, three of the four appellate departments in New York continued to uphold the administrative imposition of PRS. Myers, 22 Misc. 3d at 813 n.9 (listing several cases from the first, third, and fourth appellate departments (citations omitted)).

In April 2008, approximately two years after Earley, the New York Court of Appeals held in Garner v. N.Y. State Dep't Corr. Servs., 10 N.Y.3d 358, 859 N.Y.S.2d 590 (2008) and People v. Sparber, 10 N.Y.3d 457, 859 N.Y.S.2d 582 (2008), that PRS imposed by anyone other than a judge violates New York State law. See Garner, 10 N.Y.3d at 362. After these Court of Appeals decisions, there was significant confusion in the lower New York State courts "about what to do if the prisoner was already released on PRS" because "Garner and Sparber did not provide much guidance." Mickens v. State, 25 Misc. 3d 191, 196-97, 881 N.Y.S.2d 854 (N.Y. Ct. Cl. 2009). However, in June 2008, the New York State legislature enacted section 601-d of the Correction Law, which "provide[s] a mechanism for courts to consider resentencing defendants serving determinate sentences without court-ordered post-release supervision terms," People v. Williams, 14 N.Y.3d 198, 206, 899 N.Y.S.2d 76, 925 N.E.2d 878 (2010); see also Mickens, 25 Misc. 3d at 198.

In the wake of Correction Law § 601-d several courts found that sentencing a defendant to PRS after he had already served his determinate sentence violated the Double Jeopardy Clause, see, e.g., People v. Washington, 21 Misc. 3d 349, 352-54, 867 N.Y.S.2d 855 (Sup. Ct. N.Y. Co. 2008), while other courts found that because there could be no legitimate expectation in the finality of an illegal sentence, resentencing after the service of a determinate sentence did not violate the Double Jeopardy Clause, see, e.g., People v. Hernandez, 59 A.D.2d 180, 181, 872 N.Y.S.2d 455 (1st Dep't 2009); People v. Noor, No. 1285/99, 2008 WL 5501021, at *1-2 (Sup. Ct. Queens Co. Dec. 9, 2008). On February 23, 2010, the New York Court of Appeals resolved those differences and held that "the Double Jeopardy Clause prohibits a court from resentencing the defendant to the mandatory term of PRS after the defendant has served the determinate term of imprisonment and has been released from confinement by DOCS." Williams, 14 N.Y.3d at 217.

B. Factual Background

Prior to 2008, each of the thirty-three plaintiffs who have brought this action either pled guilty to, or was convicted of, "different crimes at different times and were given determinate sentences by different Justices of the Supreme Court of New York." (Compl. ¶¶ 18, 30-37.)[1] Although their determinate sentences varied in length, (id. ¶¶ 30-37), each plaintiff's "judicial orders . . . did not contain any Post Release Supervision [] orders," (id. ¶ 18), and each plaintiff served his respective term of PRS after service of the determinate sentence, (id. ¶¶ 30-37). These periods of PRS were administratively imposed by DOCS rather than by a judge. (Id. ¶ 18.) Several of the plaintiffs were re-incarcerated while serving their extra-judicial terms of PRS because they violated the conditions of PRS. (See, e.g., id. ¶¶ 31, 33, 35, 37(iv), 37(xviii).)

[1] Although this action has been brought as a putative class action, no class has been certified.

After these plaintiffs were re-incarcerated, three filed petitions for writs of habeas corpus to object to their re-incarceration, (id. ¶¶ 31, 37(xviii), 37(xxiv)), and courts allegedly granted at least two of those petitions, (id. ¶¶ 37(xviii), 37(xxiv)).

Plaintiffs allege that defendants initiated resentencing procedures after several plaintiffs had served their determinate sentences. (Id. ¶¶ 32, 37(viii), 37(xvii), 37(xviii), 37(xxiii), 37(xxiv), 37(xxix).) Although the allegations often do not provide specific details, it appears that one or more courts declined to resentence certain of the plaintiffs who objected to the procedure. (Id. ¶¶ 32, 37(xvii), 37(xxiii), 37(xxix)). Plaintiffs do specify that one plaintiff, Darrell Williams, was resentenced to three years of PRS after he had served his determinate sentence. (id. ¶ 37(viii).) This is the same Darrell Williams whose resentencing was declared to be an unconstitutional violation of his 5th Amendment right not to be subject to double jeopardy by the New York Court of Appeals in February 2010. See Williams 14 N.Y.3d at 217.

Plaintiffs allege that "[a]t all relevant times, each defendant, in his/her different position/s knew of the violations [of plaintiffs' constitutional rights] and had the position and authority to stop the violations [] but instead personally and, in concert with other [d]efendants, instituted, defended, and enforced the unconstitutional violations." (Compl. ¶ 9.) To redress these alleged violations, plaintiffs (1) seek a declaration that the administrative imposition of PRS following service of a determinate sentence violates a prisoner's right not to be subjected to double jeopardy, (2) seek a declaration that the operation of Correction Law § 601-d which requires the resentencing of a prisoner to PRS following service of his determinate sentence unconstitutionally subjects prisoners to multiple punishments, and (3) seek damages, pursuant to section 1983, against the individual defendants in their individual capacities for the harms caused by these constitutional violations. (Id. ¶¶ 1-3, 43-44, 47-50.)

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

On a motion to dismiss a complaint for lack of subject matter jurisdiction, "'the party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists.'" Sharkey v. Quarantillo, 541 F.3d 75, 82 (2d Cir. 2008) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). While the court must accept as true all material facts alleged in the complaint, in resolving challenges to subject matter jurisdiction, the court may look beyond the pleadings in order to satisfy itself that it has the authority to hear the action. See Filetech S.A. v. Fr. Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998) (quotation and citation omitted).

### B. Rule 12(b)(6) Standard

For purposes of a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a claim to be plausible, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id.

## III. DISCUSSION

Because the Court finds that defendants are entitled to qualified immunity and because the Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions

at the earliest possible stage in litigation,'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)), the Court will not assess the broad array of arguments that defendants assert to dismiss the plaintiffs' complaint. However, the defendants filed a motion to dismiss pursuant to Rule 12(b)(1), and the Court will consider the Eleventh Amendment challenges to this Court's jurisdiction.[2]

A. Eleventh Amendment

Plaintiffs assert claims against the State of New York itself, (Compl. ¶ 43); however, in enacting 42 U.S.C. § 1983, Congress did not abrogate the immunity from suit that the Eleventh Amendment provides a state, Quern v. Jordan, 440 U.S. 332, 345 (1979). Section 1983 "does not provide a federal forum for litigants who seek a remedy against a [S]tate for alleged deprivation of rights secured by the United States Constitution," Bryant v. N.Y. State Dep't of Corr. Servs. Albany, 146 F. Supp. 2d 422, 425 (S.D.N.Y. 2001) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 69 (1989) ("We find nothing substantial in the legislative history that leads us to believe that Congress intended that the word 'person' in § 1983 included the States of the Union.")). Accordingly, plaintiffs' claims against the State of New York are dismissed.

Defendants also contend that the Eleventh Amendment bars plaintiffs' claim for damages alleged against the individual defendants in their individual capacities because the harm was

[2] Defendants assert, as a threshold matter, that plaintiffs' damages claims are barred by Heck v. Humphrey. (Defs.' Mem. in Suppport of Motion to Dismiss at 3-5.) Heck bars plaintiffs from proceeding with § 1983 damages claims if recovery of those damages "would render a conviction or sentence invalid." Heck v. Humphrey, 512 U.S. 477, 486 (1994). This Court has previously found that challenges to administratively imposed extra-judicial PRS question the validity of PRS sentences and are not cognizable unless habeas relief has been granted or the plaintiffs are no longer in custody. Hardy v. Fischer, 701 F. Supp. 2d 614, 620 n.6, 622-23 (S.D.N.Y. 2010). Although the plaintiffs have not pled sufficient facts for the Court to determine whether each plaintiff has been released from custody or has been granted a petition for writ of habeas corpus, (see, e.g., Compl. ¶¶ 37(iii), 37(iv), 37(x), 37(xiii)), at least some of the plaintiffs appear to have been released from custody, have been granted their writs of habeas corpus, or had their terms of PRS otherwise invalidated, (see, e.g., id. ¶¶ 32, 33, 35, 37(viii), 37(xviii)). Because the Court finds that defendants are entitled to qualified immunity and dismisses all claims for damages, the Court will not further assess which claims are barred by Heck.

caused "not by any individual actions or policies on the part of the defendants', but rather by operation of Penal Law § 70.45 as interpreted by New York State courts, making the State the real party in interest." (Defs.' Supp. at 18.) However, the Eleventh Amendment does not bar claims alleged against a state official in his individual capacity even though the official is acting in accordance with state law, see Hafer v. Melo, 502 U.S. 21, 28-29 (1991) (the immunity available to state officials for individual capacity suits for retrospective damages is qualified immunity); Berman Enters., Inc. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993) (even though the state will reimburse state officials, the payment "does not make the state the real party in interest").

Therefore, defendants' Rule 12(b)(1) motion to dismiss plaintiffs' section 1983 claims for damages alleged against the individual defendants in their individual capacities is denied.[3]

B. Qualified Immunity

The doctrine of qualified immunity protects government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether a right is "clearly established," courts in this Circuit assess whether: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Anderson v. Recore, 317 F.3d 194, 197 (2d Cir.2003) (internal quotations and citations omitted). Qualified immunity applies regardless of whether an official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 129 S. Ct. at 815.

[3] Defendants argue that the Eleventh Amendment bars plaintiffs' claims for declaratory relief. (Defs.' Supp. at 16.) The Court addresses this argument below, see infra III.C.

The Second Circuit held that state officials are entitled to qualified immunity for the administrative imposition of PRS for the time period before the Second Circuit found the practice unconstitutional in 2006 in Earley. Scott v. Fischer, 616 F.3d 100, 107 (2d Cir. 2010). This Court subsequently held that state officials are also entitled to qualified immunity for the administrative imposition and enforcement of PRS for the time period after Earley but prior to the New York Court of Appeals decisions in 2008 in Garner and Sparber. Hardy v. Fischer, No. 08 Civ. 2560, 2010 WL 4359229, at *2-3 (S.D.N.Y. Nov. 3, 2010). These decisions analyzed whether the administrative imposition of PRS violated clearly established law under the Due Process Clause, see Scott, 616 F.3d at 107, but plaintiffs allege violations of the Double Jeopardy Clause and not the Due Process Clause. Neither this Court nor the Second Circuit has assessed whether it was clearly established that the administrative imposition and enforcement of extra-judicial PRS violates the Double Jeopardy Clause.

In the context of sentencing, the Fifth Amendment's Double Jeopardy Clause[4] protects defendants "'against multiple punishments for the same offense,'" United States v. DiFrancesco, 449 U.S. 117, 129 (1980) (quoting North Caroline v. Pearce, 395 U.S. 711, 717 (1969)), and protects the "legitimacy of a defendant's expectation of finality," United States v. Rosario, 386 F.3d 166, 171 (2d Cir. 2004). Although the Second Circuit noted that the "expectation of finality [in a sentence] comes from the prospect of release as a defendant nears the end of his or her prison term," United States v. Rico, 902 F.2d 1065, 1068 (2d Cir. 1990), the United States Supreme Court "held that, in certain circumstances, increasing a sentence after the defendant has begun to serve it does not violate the constitutional guarantee against double jeopardy," United States v. Gelb, 944 F.2d 52, 58 (2d Cir. 1991) (citing DiFrancesco, 449 U.S. at 137). "The

[4] The Double Jeopardy Clause reads as follows: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." DiFrancesco, 449 U.S. at 137. Therefore, a court may increase a defendant's sentence to correct a prior sentence that was not in accordance with law. See Bozza v. United States, 330 U.S. 160, 165-66 (1947); Gelb, 944 F.2d at 59 ("[W]e have held that a district judge could increase a defendant's sentence where the original sentence had been erroneously entered, despite the fact that the defendant had completed serving the prison term." (citations omitted)).

Prior to the Second Circuit's decision in Earley, New York State courts had held that DOCS did not impose a subsequent punishment of PRS; instead, DOCS merely noted the period of PRS that Penal Law § 70.45 necessarily and "automatically included in [a determinate] sentence by statue." Deal v. Goord, 778 N.Y.S.2d 319, 320, 8 A.D.2d 769 (3d Dep't 2004) (quotation and citation omitted); see also People v. White, 744 N.Y.S.2d 924, 924-25, 296 A.D.2d 867 (4th Dep't 2002) ("Postrelease supervision is mandatory for determinate sentences and is automatically included in the sentence."); People v. Goss, 286 A.D.2d 180, 183, 733 N.Y.S.2d 310 (3d Dep't 2001) ("Pursuant to Penal Law § 70.45, a period of postrelease supervision is automatically included in every determinate sentence 'as a part thereof.'" (citing N.Y. Penal § 70.45)). To find DOCS' practice unconstitutional, the Second Circuit expressly rejected the argument that a period of custody was "necessarily part of Earley's sentence by operation of law," Earley, 451 F.3d at 76, and held that a sentence is only that which is imposed by a judge and no period of custody can be added by operation of a statute. Id. at 75-76. Thus, until Earley, it was not clearly established, to a reasonable state official, that the "automatic inclusion" of PRS by statute was actually an additional and subsequent imposition of punishment that could possibly subject a defendant to multiple punishments in violation of the Double

Jeopardy Clause. Therefore, state officials are entitled to qualified immunity in regard to that issue prior to Earley.

Defendants are also entitled to qualified immunity post-Earley because prior Supreme Court double jeopardy decisions had found that in certain circumstances a subsequent increase of a defendant's sentence is constitutionally permissible, see, e.g., Gelb, 944 F.2d at 58, and, as noted above, the decision in Earley was limited to a finding of a due process violation and did not address any potential Double Jeopardy violation, Earley, 451 F.3d at 76. Earley declared the administrative imposition of PRS by DOCS procedurally deficient—i.e., only a judge could pronounce a sentence of PRS and not DOCS. Id. Given prior Supreme Court decisions, a reasonable state official would not necessarily understand from the Second Circuit's ruling in Earley that the continued imposition and enforcement of extra-judicial PRS might not qualify as a constitutionally permissible instance of correcting a previously invalid determinate sentence. Therefore, state officials are entitled to qualified immunity for their conduct post-Earley.

After the Second Circuit's decision in Earley, New York State courts continued to uphold the administrative imposition of PRS until 2008, when the New York Court of Appeals declared the practice contrary to New York law. Garner, 10 N.Y.3d at 362; Sparber, 10 N.Y.3d at 469-71; see also Scott, 616 F.3d at 107 (stating that after Earley two "Appellate Departments of the New York Appellate Division continued to the find [the administrative imposition of PRS] constitutional"). After these decisions, there was considerable confusion in the lower courts about how to address the thousands of defendants who had already been released on administratively imposed PRS. See Myers, 22 Misc. 3d at 812-13 (noting that DOCS estimated that it had administratively imposed PRS on over ten thousand defendants); Washington, 21 Misc. 3d at 351-52 (noting that in Sparber the defendant was still incarcerated and had not been

released on PRS, and that Garner did not "reach the issue of whether it would be permissible to resentence a defendant who had already served her sentence"). Neither the Second Circuit nor the New York Court of Appeals noted that having a judge resentence defendants to PRS might violate the Double Jeopardy Clause. See Earley, 451 F.3d at 76 n.2; Garner, 10 N.Y.3d at 363 ("Our holding here is without prejudice to any ability that either the People or DOCS may have to seek the appropriate resentencing of a defendant in the proper forum." (citation omitted)).

In this context, the lower New York courts wrestled with the questions of "what, if anything, was to happen after the PRS term of an already-released individual was invalidated," Mickens, 25 Misc. 3d at 197, and whether the "People and/or DOCS definitely *had* authority to resentence individuals even after they had been released from prison," id. (emphasis in original) (stating that a "split soon developed" in the lower New York courts after Garner and Sparber). Even after the New York State legislature passed Correction Law § 601-d to provide a procedure for resentencing, the lower courts in New York State disagreed about whether the resentencing of already-released individuals violated the Double Jeopardy Clause. Compare, Hernandez, 59 A.D.2d at 187 (finding the resentencing of already-released defendants constitutional), with Washington, 21 Misc. 3d at 352-54 (finding that the resentencing of already-released individuals violated the Double Jeopardy Clause).

It was not until February 23, 2010 in Williams, that the New York Court of Appeals declared that resentencing a defendant who had already served his determinate sentence and had been released violated the defendant's legitimate expectation in the finality of his sentence and thus violated the Double Jeopardy Clause. Williams, 14 N.Y.3d at 217. Because state officials are not held to the same standard of legal understanding as lawyers, McCullough v. Wyandach Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) ("The question [for qualified immunity

purposes] is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct."), given this confusion in the New York courts and the prior Supreme Court precedent, which found a subsequent increase of a previously invalid sentence constitutional, a reasonable state official would not understand that the resentencing of already-released defendants violated the Double Jeopardy Clause. Therefore, defendants are entitled to qualified immunity for their enforcement of Penal Law § 70.45 and Correction Law § 601-d through at least February 2010.

According to plaintiffs' complaint, no plaintiff was released and subjected to PRS after 2008, (Compl. ¶¶ 37(iii), 37(xxvii)), and no plaintiff was arrested and incarcerated for violations of PRS past 2008, (id. ¶¶ 37xviii), 37(xxiv)). Although some plaintiffs were resentenced, (id. ¶¶ 32, 37(viii), 37(xvii), 37(xviii), 37(xxiii), 37(xxiv), 37(xxix)), plaintiffs provide no allegations of any conduct past 2008 and certainly do not provide any allegations of conduct by any defendant after the New York Court of Appeals found the resentencing of plaintiff Williams, pursuant to Correction Law § 601-d, unconstitutional. Because the defendants are entitled to qualified immunity for the enforcement of Penal Law § 70.45 and Correction Law § 601-d at least until February 23, 2010, and the defendants' conduct occurred prior to 2010, the individual state officials who are defendants are immune from a suit for damages.

Accordingly, the Court grants the defendants' motion to dismiss the section 1983 claims for damages alleged against the individual defendants in their individual capacities.

C. Declaratory Relief

Plaintiffs seek a declaration (1) that the administrative imposition of PRS by DOCS pursuant to Penal Law § 70.45 violated the plaintiffs' constitutional right not to be subjected to Double Jeopardy, and (2) that Correction Law § 601.d is "unconstitutional null and void."

(Compl. at 24.) District Courts enjoy "substantial discretion in deciding whether to declare the rights of litigants" in the context of a declaratory judgment action. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995); see also 28 U.S.C. § 2201(a); Green v. Mansour, 474 U.S. 64, 72 (1985).

However, the Eleventh Amendment bars district courts from ordering declaratory relief if there is no "'claimed continuing violation of federal law.'" Ward v. Thomas, 207 F.3d 114, 199 (2d Cir. 2000) (quoting Green, 474 U.S. at 73) (finding that the Eleventh Amendment bars declaratory relief when a law has been amended and the only relief available is a declaration that the state's *past* conduct was in violation of federal law)). The New York Legislature has amended Penal Law § 70.45 to now require that "when a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision as determined pursuant to this article." Penal Law § 70.45. Moreover, there are no allegations that DOCS continues to administratively impose PRS following service of determinate sentences. Therefore, there is no alleged "continuing violation of federal law," Ward, 207 F.3d at 119 (quoting Green, 474 U.S. at 74.), and the Eleventh Amendment bars this Court from issuing a declaration that the administrative imposition of PRS by DOCS upon plaintiffs who had already served their determine sentences violates the Double Jeopardy Clause.

Plaintiffs also request that the Court declare that Correction Law § 601-d is unconstitutional as a violation of the Double Jeopardy Clause. However, the New York Court of Appeals in Williams already held such operation of the Correction Law § 601-d to be unconstitutional to the extent that it required judicial resentencing after inmates had completed their determinate terms of incarceration. Moreover, this Court has found defendants are entitled to qualified immunity from suit and otherwise dismisses all other claims. Therefore, the Court

declines to grant declaratory relief. See Campbell v. Greisberger, 80 F.3d 703, 706 (2d Cir. 1996) (finding the district court justified in dismissing claims for declaratory relief when it had dismissed plaintiff's other claims), abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005).

## IV. CONCLUSION

The Court dismisses all claims against New York State on the grounds that the Eleventh Amendment bars such a suit. The Court also dismisses the plaintiffs' section 1983 claims for damages alleged against the individual defendants in their individual capacities because state officials are entitled to qualified immunity. Finally, the Court finds that the Eleventh Amendment bars one of plaintiffs' two requests for declaratory relief and declines to grant plaintiffs' second request for declaratory relief. Accordingly, defendants' motion to dismiss the complaint is granted.

Dated: New York, New York
January 4, 2011

SO ORDERED:

Sidney H. Stein, U.S.D.J.